## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRAVIS B. HOLMAN, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO.CIV-17-886-M |
| v. | ) | |
| | ) | **State Case No. CJ-2016-1344** |
| COVENTRY HEALTH & LIFE | ) | **District Court of Oklahoma County** |
| INSURANCE COMPANY, *et. al.* | ) | |
| | ) | |
| Defendants. | ) | |

## COVENTRY HEALTH & LIFE INSURANCE COMPANY'S NOTICE OF REMOVAL

Defendant Coventry Health & Life Insurance Company ("Coventry") hereby submits this second notice of removal of this case from the District Court in and for Oklahoma County, Oklahoma, in which it was commenced, to the United States District Court for the Western District of Oklahoma. The case was previously removed on September 16, 2016, based on the fraudulent joinder of the non-diverse Green Insurance Associates, Inc. ("Green Insurance"). Plaintiffs successfully defeated that removal by arguing that Green Insurance was a necessary party and if it was determined that Coventry was not obligated to provide insurance, then Green Insurance was liable to Plaintiffs in negligence for failing to procure a health insurance policy for them. Those arguments have proven to have been a sham. Plaintiff Melissa B. Byers-Holman ("Attorney Holman"), a 16 year Oklahoma attorney, failed to disclose to this Court that she was a relative of the owners of Green Insurance and she and her law firm were litigation attorneys for the owners of the fraudulently joined Green Insurance and its

affiliate. Consistent with those relationships, during the 16 months since filing the lawsuit, Plaintiffs took no discovery from Green Insurance to advance any of the legal theories which they represented to this Court as grounds for remand. Plaintiffs waited for the one year period to pass and on August 4, 2017, voluntarily dismissed Green Insurance. This second removal is based on the bad faith exception (to removing after one year) which Congress enacted in 2012 to prevent the very abuse practiced here.

## SUMMARY OF THE BASIS FOR REMOVAL

1.      Coventry may remove this action based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b).

2.      As set forth below, removal is timely because plaintiff acted in bad faith to prevent Coventry from earlier removing the action. 28 U.S.C. § 1446(c)(1).  In this regard, this Notice of Removal is timely filed, because it is filed within thirty (30) days after August 4, 2017, when plaintiff voluntarily dismissed Green Insurance Associates, Inc. ("Green Insurance"), a non-diverse party joined solely for the purpose of defeating diversity jurisdiction.

## PROCEDURAL HISTORY AND STATE COURT FILINGS

3.      On or about March 11, 2016, Plaintiff initiated this case by filing a Petition in the District Court in and for Oklahoma County, Oklahoma at Docket Number CJ-2016-1344. Attached hereto as Exhibit 1 is a true a correct copy of the state court docket. A true and correct copy of the Petition is attached hereto as Exhibit 2.[1]

---

[1] The remaining pleadings filed in the District Court for Oklahoma County are attached hereto as Exhibits 10 and 11.

4.     According to the Petition, the Plaintiff is a resident of the state of Oklahoma.

5.     Plaintiffs' Petition is silent as to the domicile and principal place of business of Coventry. Accordingly, Coventry provides the following information for the court's benefit.

6.     Coventry is a foreign corporation domiciled in and organized under the laws of the state of Missouri. Coventry's principal place of business is in Bethesda, Maryland. Thus, Coventry is a citizen of the states of Missouri and Maryland.

7.     The voluntarily dismissed Defendant Green Insurance is a corporation domiciled in and organized under the laws of the state of Oklahoma and has its principal place of business in Oklahoma. Jason and Nicole Green are the owners of Green Insurance.  Their companies, Green Insurance and The Insurance Center Agency, Inc., are clients of Attorney Holman and her firm.  In addition, Jason and Nicole Green are relatives of Attorney Holman.  (Ex. 6, Declaration of Leasa M. Stewart ¶ 9.)

8.     Coventry submits, as more fully set forth below, that the Oklahoma-domiciled defendant Green Insurance was joined in bad faith for a time period exceeding one year after the filing of the case for the sole purpose of attempting to defeat federal diversity jurisdiction.

9.     Plaintiffs allege and pray for damages in excess of $75,000, exclusive of interest and costs. With respect to the claims for breach of the duty of good faith and fair dealing, Plaintiffs allege that they are seeking an amount in excess of $75,000 for each Plaintiff for all general and specific damages described in Count I. With respect to the

claims for breach of insurance contract in Count III, Plaintiffs allege and pray for damages in excess of $10,000 for each Plaintiff, or a total in excess of $20,000. With respect to the claims for punitive damages, Plaintiffs allege and pray that they are seeking an amount in excess of $75,000 for each Plaintiff. Accordingly, it is apparent from the face of the Petition that the total damages sought by Plaintiffs in the state court action against Coventry exceed $75,000, exclusive of interest and costs.   (*See generally*, Petition.)

10.     On September 16, 2016, the case was previously removed based on the fraudulent joinder of the non-diverse Green Insurance.  At the time of the removal, Green Insurance had filed a motion to dismiss which was pending in state court likewise asserting that it had been fraudulently joined. Plaintiffs moved to remand and the Court granted that motion based on Plaintiffs' argument that Green Insurance was a necessary party, because if it was determined that Coventry was not obligated to provide insurance, then Green Insurance was liable to Plaintiffs in negligence for failing to procure the requested health insurance policy for them. (Ex. 4.)[2]

11.     Due to the voluntary dismissal of Green Insurance, the remaining controversy is between parties who are residents of different states, with alleged damages in excess of $75,000. The district courts of the United States have original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties, and it is facially apparent from the Petition that the alleged

---

[2]  Attached hereto as Exhibit 4 is a true and accurate copy of Plaintiffs' September 28, 2016 Motion to Remand.

amount in controversy exceeds $75,000, exclusive of interest and costs**.** Therefore, removal jurisdiction exists under 28 U.S.C. § 1441(a).

12.     This notice of removal is timely filed with this Court pursuant to 28 U.S.C. § 1446(b)(3), because this notice is filed within thirty days after receipt by Coventry, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.  A copy of the Dismissal of Green Insurance filed by plaintiff in the state court action on August 4, 2017 is attached hereto as Exhibit 3.

13.     Furthermore, this notice is timely under 28 U.S.C. § 1446(c)(1) because Plaintiffs acted in bad faith to prevent Coventry from removing the action within one year from commencement of the action.

14.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this notice of removal will be served on counsel for Plaintiffs, and a copy of this notice of removal will be filed with the clerk of the District Court of Oklahoma County, State of Oklahoma.

15.     Pursuant to Local Civ. R. 81.2, copies of all documents served on Coventry in the state court action, as well as a copy of the docket sheet in the state court action, are filed contemporaneously herewith and adopted herein by reference.

16.     With regard to the issue of the Plaintiffs' bad faith conduct designed to prevent Coventry from removing the action for a second time within one year from commencement of the action, Defendant submits the following background, argument, and authorities:

## PLAINTIFFS' BAD FAITH ACTIONS PREVENTED REMOVAL WITHIN ONE YEAR OF COMMENCEMENT OF THE ACTION

## I.   INTRODUCTION

This case presents the perfect example of the abuse Congress sought to curtail in 2012 when it amended 28 U.S.C. § 1446(c) to add a bad faith exception to the one-year deadline for removing a case to federal court. The record developed since Plaintiffs successfully argued in this Court that they had not fraudulently joined Green Insurance to destroy federal diversity jurisdiction has demonstrated those arguments to be a facade. Plaintiffs' bad faith conduct prevented a second removal within one year of commencement of the action, and thus, justifies removal of this case based on diversity jurisdiction because Green Insurance was a non-diverse party joined solely for the purpose of defeating diversity jurisdiction under 28 U.S.C. § 1446(b).

Tenth Circuit courts establish that showing bad faith is a two-step inquiry. First, the court inquires whether the plaintiff actively litigated against the non-diverse defendant in state court: for example, asserting valid claims, taking discovery, seeking default judgment, and/or any motion practice. The failure to actively litigate against the non-diverse defendant is bad faith. If there is enough evidence to show sufficient active litigation against the non-diverse defendant, that creates a rebuttable presumption of good faith. Second, a defendant may rebut this presumption with direct evidence already in the defendant's possession which establishes that, despite the plaintiff's active litigation against the non-diverse defendant, the plaintiff would not have named it or would have dropped that defendant before the one-year mark but for the plaintiff's desire

to keep the case in state court. Congress codified the bad faith exception in 28 U.S.C. § 1446 (c)(1) to prevent the exact conduct present here.

On March 11, 2016, Plaintiffs filed their Petition alleging that they had claims in excess of $225,000 against Coventry and Green Insurance.  Yet they never served Coventry or Green Insurance with the Petition and litigation did not actually commence until August 2016 when Coventry's counsel agreed to accept service of the Petition. Coventry immediately removed the action on the basis of the fraudulent joinder of Green Insurance. Plaintiffs sought remand claiming that Green Insurance was a necessary party. Plaintiffs argued Coventry denied coverage under the Coventry insurance policy[3] and that if no coverage existed, Green Insurance was negligent for failing to secure the requested coverage and/or acted negligently upon learning that the policy terminated for non-payment of the premium and failing to obtain reinstatement for Plaintiffs.  Yet, in the 16 months since this litigation ensued, Plaintiffs not only failed to serve Green Insurance, but they did nothing to actively pursue any negligence theory against Green Insurance. Instead, they only served token requests for admissions that sought authentication of emails between Green Insurance and Attorney Holman, which she could authenticate

---

[3] On November 19, 2013, Attorney Holman applied to Coventry for a replacement health insurance policy to become effective December 1, 2013 with a $ 2,500 lower deductible without disclosing on her application that she had an upcoming surgery which took place on December 18, 2013.  Coventry issued the new policy for coverage during December 1, 2013 to December 31, 2013 and gave notice of the monthly premium.  After providing four (4) notices of non-payment of the $ 1,268.84 owed (the $1,263.84 monthly premium plus $5.00 administrative fee)—copies of which went to Green Insurance—the policy was cancelled for non-payment on March 1, 2014. Under the terms of the policy, Coventry was not required to reinstate it.

herself under 12 O. S. § 2901 and an admission to support Plaintiffs' claim against Coventry that insurance was procured. (Ex. 5.)[4]

Despite having a case they valued in excess of $225,000 against Green Insurance, they sought no other discovery—documents, depositions, or interrogatories—from Green Insurance to support the claims in their petition that Green Insurance was negligent in either failing to procure insurance or obtain reinstatement and did not pursue "competent and thorough discovery" from Green Insurance as promised in their Petition.  (Ex. 2, ¶ 46.)  In fact, Plaintiffs did nothing to pursue their claims against Green Insurance, and rather continued to promise Green Insurance it would be dismissed. (Stewart Dec. ¶ 4.) Plaintiffs waited for the one-year removal deadline to expire, and then, on August 4, 2017, voluntarily dismissed Green Insurance before obtaining any judicial determination that coverage existed under the insurance policy—their proffered reason for naming and maintaining their suit against Green Insurance—in essence walking away from a claim they valued in excess of $225,000.  Thus, the argument Plaintiffs made to this Court that Green Insurance was not fraudulently joined was a sham.  Plaintiffs' failure to pursue their negligence claims and voluntary dismissal of the fraudulently joined Green Insurance is both inconsistent and implausible in light of their prior representations to this Court.

---

[4]  Attached hereto as Exhibit 5 are true and correct copies of Green Insurance's April 11, 2017 Responses to Plaintiffs' First Set of Requests for Admission Directed to Green Insurance.

The reasons for this lack of active litigation and subsequent dismissal of Green Insurance are clear: Plaintiffs only named and kept Green Insurance as a defendant to preclude federal jurisdiction.  Attorney Holman did not disclose at the time of the first removal that she was related to the owners of Green Insurance and that she and/or her firm were attorneys for Green Insurance and its affiliate.  (Stewart Dec. ¶¶ 9-23.) If this was not a sufficient "smoking gun," there is further direct evidence. Plaintiffs' counsel finally admitted on August 3, 2017 at a conference between attorneys that he did not want to dismiss Green Insurance because if there was any chance of removal, Coventry's counsel would find a way to remove. (*Id.* ¶¶ 4-7.) Apparently, he was convinced by Green Insurance's counsel that the "one year" rule was an ironclad bar to removal.  With these assurances, he voluntarily dismissed Green Insurance the very next day, without obtaining any judicial determination that Green Insurance had procured a policy of insurance for Plaintiffs. The dismissal without any determination of coverage directly contradicts the arguments Plaintiffs previously made to this Court in seeking remand of the first removal.

For these reasons, removal is proper under Sections 1446(b) and 1446(c)(1) because the maintenance of claims against Green Insurance was nothing more than a ploy to keep the Plaintiffs' suit in state court and defeat Coventry's right to the protections of federal court.

## II.   **BACKGROUND**

### A.   **Plaintiffs Name Green Insurance as a Party—the Owners of Which Are Their Relative and Client—and Never Serve Green Insurance.**

Plaintiffs named Coventry and Green Insurance as defendants when they filed their Petition on March 11, 2016. (Ex. 2.) Yet, Plaintiffs never served either defendant in the state court action. (Ex. 1.)  Rather, Coventry learned of the lawsuit on or about June 7, 2016 and immediately contacted Plaintiffs' counsel in attempt to seek early resolution of the claims.  Plaintiffs refused, never attempted to serve process, and Coventry agreed to accept service.

As to Green Insurance, it appeared in the state court action on September 15, 2016 by filing a Motion to Dismiss the sole negligence claim against it on the grounds that it had been improperly joined in the action. Indeed, Plaintiffs naming of Green Insurance raised serious ethical issues from the start because Attorney Holman and her firm were litigation counsel for the owners of Green Insurance and its affiliate, The Insurance Center Agency, Inc. ("TIC"). (Stewart Dec. ¶¶ 9-23.)  Specifically, Green Insurance's owners retained Attorney Holman to represent Green Insurance in a collection matter. (*Id.* ¶ 9.)  Its owners are producers for TIC and hold Green Insurance out as affiliated with TIC, *e.g.*, using the TIC office address, phone number, and e-mail address to conduct Green Insurance business.  (*Id.* ¶¶ 10-13, 16-17.)

Attorney Holman continued to represent the owners of Green Insurance and their affiliate TIC—despite asserting in her Petition that the owners were negligent in 2014 for failing to procure her insurance. (*Id.* ¶¶ 14-23.) As late as March 10, 2016, one day before

the filing of the Petition, Attorney Holman continued that representation of TIC. (*Id.* ¶ 15.) Even after the filing of the Petition, she continued to communicate with Jason Green, one of the owners and her relative. Attorney Holman had apparently falsely told Green that naming his agency as a defendant was only a formality required when suing a carrier. (*Id.* ¶¶ 16-18, Ex. F.) In a March 15, 2016 email, Jason Green confronted Attorney Holman about the purported reason for her suit and proffered that the true reason was the "keep it out of federal court issue." (*Id.*) Attorney Holman never answered, but Plaintiffs' conduct has shown that to be true. Remarkably, even after filing suit, Attorney Holman's firm continued to represent Green Insurance and its affiliates. In fact, she has never withdrawn from that representation. (*Id.* ¶¶ 18-23.)

As was obvious to Green Insurance and never denied by Attorney Holman, she had no intention of pursuing her claims against her relatives and client, Green Insurance, despite Plaintiffs' claims in the Petition and before this Court that Green Insurance was a necessary party. Plaintiffs promised to amend and supplement their claims based on thorough and competent discovery: "[Plaintiffs] reserve the right to amend and supplement these claims after competent and through [sic] discovery has been conducted by Plaintiffs." (Ex. 2, ¶ 46.) Despite their claim that Green Insurance was a necessary party and their promise to do thorough and competent discovery, Plaintiffs only served one set of requests for admission seeking to authenticate emails which were sent to Attorney Holman and could have easily been authenticated by her.

**B.** **Coventry Removes Based on Fraudulent Joinder and Plaintiffs Move to Remand Based on Their Sham Claim That They Were Pursuing a Negligence Claim Against Green Insurance for Failing to Procure the Requested Insurance Coverage.**

Coventry removed the action to this Court on September 16, 2016. The basis of the first removal was that the amount in controversy exceeded the jurisdictional amount required by 28 U.S.C. § 1332, and that due to the fraudulent or improper joinder of the non-diverse Green Insurance, complete diversity existed between all proper parties. On September 28, 2016 Plaintiffs moved to remand the action based on the allegation that their Petition alleged a valid claim against Green Insurance for its negligent failure to procure insurance. (Ex. 4.) The entire premise of Plaintiffs' claim against Green Insurance to support remand was that if a contract of insurance did not exist with Coventry, then Green Insurance was negligent in failing to procure the requested insurance:

> Responsibility for coverage not being provided can fall on: (1) Defendant Coventry for breaching the procured contract, (2) **Defendant Green Insurance for not procuring the contract as requested**, or (3) Plaintiffs as argued by Defendant Coventry in its brief.

(Ex. 7, p. 3.[5]; Ex. 4, pp. 1-2 (stating that single issue is whether Green Insurance failed to procure insurance as requested).)[6] Further, in response to Green Insurance's motion to

---

[5] Attached hereto as Exhibit 7 is a true and correct copy of Plaintiffs' October 26, 2016 Reply in Support Their Motion to Remand.

[6] Plaintiffs also claimed that Green Insurance was named because if it learned that the requested coverage had not been procured and Green Insurance did nothing to make adjustments or corrections, then Green Insurance was negligent: "If what Defendant Green Insurance says in its brief is true, it is negligent for an insurance agent to say the coverage requested had been procured, and do nothing upon learning that the requested

dismiss, Plaintiffs claimed that the bad faith claim against Coventry was an alternative theory premised on the fact that there was coverage.  (*See* Ex. 8.)[7]

Based on those representations, this Court found that although the Petition was not particularly specific or detailed, the Plaintiffs alleged that Coventry's claimed basis of denial of coverage was that Green Insurance was negligent in procuring coverage.  (Ex. 9, Remand Order).[8]  Thus, this Court granted Plaintiff's Motion to Remand on December 6, 2016, finding that on the record before the Court at that time, the court could not say there was no reasonable possibility of recovery against Green Insurance.

### C.   Plaintiffs Do Nothing to Actively Litigate Against Green Insurance And Voluntarily Dismiss Green Insurance After the One-Year Time Limit for Diversity Removal Expires.

After remand, Plaintiffs did not pursue or actively litigate their claims against Green Insurance despite promising thorough and competent discovery. Sixteen months after filing the lawsuit, the Plaintiffs voluntarily dismissed Green Insurance without conducting any discovery on their negligence theory against Green Insurance, without a settlement, and without obtaining a determination from the Court that a contract of

---

coverage had in fact not been procured. Based on the position taken by Defendant Coventry and Defendant Green Insurance's solemn admission that it did nothing upon learning the requested coverage had not been procured, Defendant Green Insurance was negligent."  (Ex. 8, pp. 6-7); *see also id.* at 9-10 (citing A-*OK Construction, Inc. v. McEldowney, McWilliams, DearDeuff, & Journey, Inc.*, 844 P.2d 182 (Okla. Civ. App. 1992) and *Swickey v. Silvey Cos.*, 979 P.2d 266 (Okla. Civ. App. 1999) as support)).

[7]   Attached hereto as Exhibit 8 is a true and correct copy of the Plaintiffs' Brief in Opposition to Green Insurance's Motion to Dismiss.

[8]   Attached hereto as Exhibit 9 is a true and correct copy of the Court's December 16, 2016 Order of Remand.

insurance existed with Coventry such that Green Insurance was not negligent in failing to procure insurance.  (Ex. 3; Stewart Dec. ¶ 8; Ex. 10.)[9] Coventry continues to defend the Petition asserting that the policy was terminated for non-payment of premium, properly not reinstated and is voidable for misrepresentations on the insurance application where Attorney Holman failed to disclose her impending surgery.[10]

Indeed, during the one-year time period between March 11, 2016, when the Petition was filed, and March 11, 2017, when the one-year time period expired, Plaintiffs conducted no discovery against Green Insurance.  In contrast, upon remand, Plaintiffs immediately served Coventry with Requests for Production of Documents, Interrogatories, and Requests for Admission geared towards both fact discovery and liability issues. After the expiration of the one-year time period, between March 12, 2017 and August 4, 2017, the date that Plaintiffs voluntarily filed a Dismissal of Green Insurance, Plaintiffs only served token Requests for Admission on Green Insurance which simply sought to authenticate emails which Attorney Holman could herself authenticate.  Plaintiffs sought no other discovery from Green Insurance.  Rather, they

---

[9]  Attached hereto as Exhibit 10 is a true and correct copy of Plaintiffs' August 3, 2017 Partial Motion for Summary Judgment on whether a contract of insurance existed between Coventry and Plaintiffs.

[10]  On or before June 25, 2017, Coventry paid $4,766.52 to satisfy the outstanding medical bills at issue with a reservation of rights, *see Bryant v. Sagamore Ins. Co.*, 597 Fed.Appx. 968, 971 (10th Cir. 2015) (applying Oklahoma law); *see also Hayes Family Trust v. State Farm Fire & Casualty Company*, 845 F.3d 997, 1008-09 (10th Cir. 2017) (applying Okla. Law). Nevertheless, Plaintiffs persist in claiming over $850,000 in damages.

dismissed Green Insurance while the coverage question remains disputed.   (Ex. 10; Stewart Dec. ¶ 8.)

   D.   **Plaintiffs' Counsel Confirms That Green Insurance Was Named and Maintained in Lawsuit to Defeat Diversity.**

   As Green Insurance knew and Plaintiffs' subsequent conduct has confirmed, Green Insurance was named and maintained as a defendant solely to defeat diversity. First, Plaintiffs' counsel had been promising to dismiss Green Insurance for months. (Stewart Dec. ¶ 4.) Second, on August 3, the state court held a scheduling conference between the parties. (*Id.*) After that hearing, in response to Green Insurance's counsel's contention that the one-year deadline for removal had passed and Coventry could no longer remove, Plaintiffs' attorney admitted to Coventry's counsel and Green Insurance's counsel that he did not want to dismiss Green Insurance because if he did, Coventry would find a way to remove.  (*Id.*) Green Insurance's counsel responded to Plaintiffs' counsel that the one year rule was a hard deadline barring removal and that he would send him supporting cases. (*Id.*) The next day, Plaintiffs voluntarily dismissed Green Insurance, fulfilling its long-standing promise.  (Stewart Dec. ¶ 4.)

   Where, as here, direct evidence confirms that Plaintiffs named a non-diverse Defendant with the sole purpose of defeating diversity removal, and failed to take any steps whatsoever to pursue their claims against that defendant, it is evident that Plaintiffs acted in bad faith to prevent removal.

## III.   <u>LAW AND ARGUMENT</u>

Under 28 U.S.C. § 1446(b)(3), a case that was not initially removable when filed, may be removed within one year of the case becoming removable:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Where, as here, the one-year timeframe to remove has run, a party may still remove if the court finds that the plaintiff has acted in bad faith to prevent a defendant from removing the action within the one-year timeframe prescribed by the statute. *Id.* § 1446(c)(1); *see, e.g.*, *Calvary Baptist Church v. Church Mut. Ins. Co.*, No. CIV-15-1283-M, 2016 U.S. Dist. LEXIS 15970 (W.D. Okla. Feb. 10, 2016) ("Based on the evidence provided by defendant, the Court finds that plaintiff acted in bad faith in order to prevent defendant from removing this action, and, therefore, defendant is not subject to the one year prohibition on removal in diversity actions.").

The legislative history of the inclusion of this exception is instructive here.  In 1988, Congress amended Section 1446(b) as "a means of reducing the opportunity for removal after substantial progress has been made in state court," H.R. Rep. No. 100-889 at 72 (1988), reprinted in 1988 U.S.C.C.A.N 5982, 6032 (subsequently presented to the Senate, 134 Cong. Rec. S16308-09 (daily ed. Oct. 14, 1988)); *see also* H.R. Rep. 112-10, at 15 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 576, 580. "Ever since, courts and commentators have noted that the provision could 'invite tactical chicanery' by allowing plaintiffs to circumvent removal jurisdiction by adding, dismissing, or serving parties."

*Hous. & Tax Consultants, LLC v. Olsen*, No. 13-CV-522-GKF-PJC, 2013 U.S. Dist. LEXIS 163429, *3-5 (N.D. Okla. Nov. 18, 2013) (quoting *Richfield Hospitality Inc. v. Charter One Hotels and Resorts, Inc.*, 978 F. Supp. 2d 1194, 1195-1196 (D. Colo. 2013)); *see also* H.R. Rep. 112-10, at 15 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 576, 580 (noting that the change led some plaintiffs to adopt removal-defeating strategies designed to keep the case in state court until after the one-year deadline passed).

In those situations, the federal courts of appeal were split as to whether the one-year limitation was jurisdictional, and therefore an absolute limit on the district court's jurisdiction, or procedural, and therefore subject to equitable tolling. *Id.*; *e.g.*, *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003) (applying equitable bad faith exception to the one-year limitation); *Richfield Hospitality*, 2013 WL 561256, *2 (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.12 (11th Cir. 1994)). In *Tedford*, "[t]he Fifth Circuit remained the only Circuit to endorse the equitable exception, and only three district courts outside of the Fifth Circuit applied the exception and refused to remand a case on bad-faith grounds." *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1270 (D.N.M. 2014).

To resolve this conflict, clarify the jurisdiction of the Federal courts and stop the abuse, Congress "'close[d] this loophole in the law by the inclusion of the bad faith exception, now codified at section 1446(c)(1), which was part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (the "Act"), Pub.L. No. 112-63, 125 Stat. 758 § 103 (2011).'" *Hous. & Tax Consultants*, 2013 U.S. Dist. LEXIS 163429 (quoting *Richfield Hospitality*, 978 F. Supp. 2d at 1195-96)); *see also* H.R. Rep. 112-10,

at 1, 15; *see also* Pub. L. No. 112-63; *see also Aguayo*, 59 F. Supp. 3d at 1271 (codifying bad faith exception clarified that the one-year limitation is indeed procedural).  The Act grants district courts discretion to allow removal after the one-year limit if they find that the plaintiff has acted in "bad faith in order to prevent a defendant from removing the action." H.R. Rep. 112-10, at 1, 15. The legislative history indicates Congress' intent:

> New paragraph 1446(c)(1) adds to the current one-year limitation on removal of diversity actions a limited exception, authorizing district courts to permit removal after the one-year period if the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

*Id*. at 15; *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, No. 12-MD-2342, 2014 WL 2445799, at *2 (E.D. Pa. May 29, 2014).

The court in *Aguayo* was the first federal court to comprehensively construe the Act. *Aguayo*, 59 F. Supp. 3d 1225. The court held that a plaintiff's bad faith can manifest itself when a plaintiff names or retains non-diverse defendants to defeat complete diversity.  *Id.* at 1261. While a high threshold, courts in the Tenth Circuit have construed the bad-faith exception as a two-step standard. *Id*. at 1273.  The first question is whether the plaintiff actively litigated against the non-diverse defendant in state court.  *Id*. at 1274.  Failure to actively litigate against the non-diverse defendant will be deemed bad faith; actively litigating against the non-diverse defendant, however, creates a rebuttable presumption of good faith. *Id*. 1275. Second, a defendant may attempt to rebut the presumption with direct evidence already in the defendant's possession which establishes that, despite the plaintiff's active litigation against the non-diverse defendant, the plaintiff would not have named the non-diverse defendant or would have dismissed

that defendant before the one-year mark but for the plaintiff's desire to keep the case in state court. *Id*.

### A.      Plaintiffs Did Not Actively Litigate Their Claims.

Failure to actively litigate against the non-diverse defendant, or a mere scintilla of litigation against the non-diverse defendant, will be deemed bad faith. *Aguayo*, 59 F. Supp. 3d at 1262–63; *see, e.g.*, *Partin v. Martin Fire & Safety Co.*, No. 16-CV-647-JED-FHM, 2017 WL 2931401, at *4 (N.D. Okla. July 10, 2017) (finding that the exception to the one-year time limit in § 1446(c) was satisfied in a case with complete diversity where plaintiff refused to comply with the Oklahoma pleading statute, to respond to discovery, and to comply with the state court's order regarding damages pleading).  Any non-token amount of discovery or other active litigation garners a presumption of good faith. *Aguayo*, at 1275. The key inquiry is whether the litigation against the non-diverse defendant was token or not.  To assess whether a quantum of litigation is token, the Court considers "the amount of litigation commenced against the spoiler in light of: (1) the amount of time the spoiler spent joined to the case…and (ii) the size and money value of the case." *Id*. at 1262-1263.

For example, bad faith exists where only token discovery is served on the non-diverse defendant and the plaintiff provides an inconsistent or implausible explanation for the dismissal of the non-diverse defendant. *Forth v. Diversey Corp.,* No. 13–cv–808–A, 2013 WL 6096528, at *3 (W.D.N.Y. Nov. 20, 2103) (finding bad faith where plaintiff dismissed non-diverse defendant 18 months after filing lawsuit without discovery and offered inconsistent and implausible explanations for failure to dismiss earlier); *Massey v.*

*21st Century Centennial Ins. Co.*, No. 2:17-cv-01922, 2017 U.S. Dist. LEXIS 119431, *9-14 (S.D. W. Va. July 31, 2017) (engaging in discovery against non-diverse defendant solely for purposes of pursuing claim against diverse defendant while serving extensive discovery on diverse defendant showed a lack of active litigation and bad faith). Moreover, the failure to serve or long delays in serving process on the non-diverse defendant shows a failure to actively litigate. *See, e.g.*, *Lawson v. Parker Hannifin Corp.*, No. 4:13-CV-00923, 2014 WL 1158880, at *6 (N.D. Tex. Mar. 20, 2014) (plaintiff waited seven months following the filing of the case to serve the non-diverse defendant, failed to serve him with discovery, take depositions, and dismissed the non-diverse defendant three months after the expiration of removal deadline); *Heller v. Am. States. Ins. Co.*, No. CV 15–9771 DMG, 2016 WL 1170891, at *2-3 (C.D. Cal. Mar. 25, 2016) (plaintiff did not serve the non-diverse defendant with a summons for more than one year); *Massey*, 2017 U.S. Dist. LEXIS 119431, *9-14 (failure to serve the non-diverse defendant indicates bad faith).

Here, it is abundantly clear the Plaintiffs maintained their action against Green Insurance in bad faith. Despite asserting a claim for negligence against Green Insurance which Plaintiffs valued at more than $225,000, they did nothing to pursue this claim for the nearly sixteen months since Green Insurance was named in the lawsuit. Indeed, Plaintiffs promised thorough and competent discovery in their Petition to supplement their claims against Green Insurance.  Yet, like the token discovery in *Massey*, Plaintiffs only served Green Insurance with requests for admission that sought authentication of emails they already had and could authenticate themselves.  Moreover, these token

requests did nothing to further an alleged claim of negligence against Green Insurance, but rather served the purposes of attempting to establish liability against Coventry.

In contrast, they served extensive discovery on Coventry. As further confirmation that Green Insurance was kept in this lawsuit solely to defeat diversity, the only other litigation action Plaintiffs took directly against Green Insurance was filing the Motion to Remand and their Opposition to Green Insurance's Motion to Dismiss on the basis that (1) if there was no coverage under the Coventry insurance policy, Green Insurance was negligent in procuring the insurance or (2) Green Insurance was negligent in not correcting any issues upon learning that there was an issue with coverage.   This pretextual argument for maintaining suit against Green Insurance rings hollow following the Plaintiffs voluntary dismissal of Green Insurance after the one-year removal deadline passed without ever obtaining any ruling that there was coverage under the insurance policy.   Such conduct is wholly inconsistent with Plaintiffs' representations to this Court and demonstrates Plaintiffs' sole justification for naming Green Insurance is implausible. Accordingly, Plaintiffs did not actively litigate against Green Insurance, and the bad faith exception excuses the one-year deadline for removal under Section 1446(c)(1).

**B.      Even if the Plaintiffs Are Entitled to a Presumption of Good Faith, the Direct Evidence of Bad Faith Is Overwhelming.**

The removing defendant can rebut the good-faith presumption with direct evidence already in its possession that establishes, despite the plaintiff's active litigation against the non-diverse defendant, the plaintiff would not have named the non-diverse defendant or would have dropped the non-diverse defendant before the one-year mark but

for the plaintiff's desire to keep the case in state court. *Aguayo*, at 1275.  If "the defendant has strong, unambiguous evidence of the plaintiff's subjective intent, for which the plaintiff cannot offer any plausible alternative explanation[,]" the court should find bad faith. *Id.* at 1277.

Here, there is strong, unambiguous evidence of Plaintiffs' subjective intent that they would not have named Attorney Holman's relatives and client Green Insurance or would have dismissed Green Insurance earlier but for their desire to keep the case in state court.  First, if Attorney Holman had truly intended to actively litigate her negligence claim against Green Insurance—a relative and client—certainly she would not have continued her and her law firm's representation of Green Insurance and its affiliate even after this suit was filed. Such continued representation under these circumstances would arguably run afoul of her ethical obligations. Second, Attorney Holman refused to respond to Jason Green's March 15, 2016 email contending that her true reason for naming Green Insurance as a defendant was the "keep it out of federal court issue". Third, for months, Plaintiffs' counsel had been promising to dismiss Green Insurance, but confirmed at the August 3, 2017 hearing that it did not do so solely because Coventry would find a way to remove if Green Insurance was dismissed. It was only after receiving assurances from Green Insurance that the "one year" rule barred removal that Plaintiffs dismissed Green Insurance the very next day.   This direct evidence is sufficient to rebut any presumption of good faith.

## IV.   CONCLUSION

For the foregoing reasons, Coventry respectfully requests that the Court find that this case was removed properly under 28 U.S.C. §§ 1332, 1446(b) and 1446(c)(1) and that it should retain jurisdiction of this lawsuit based on diversity jurisdiction. This is exactly the type of case and abuse which Congress had in mind in 2012 when it enacted the bad faith exception to the one year bar on removal from state court.

WHEREFORE, the above-captioned action, pending in the District Court for Oklahoma County, Oklahoma, is hereby removed therefrom to this Court.

Dated: August 17, 2017

Respectfully submitted,

/s/ Leasa M. Stewart
Leasa M. Stewart, OBA # 18515
GABLEGOTWALS
One Leadership Square, 15th Floor
211 N. Robinson Ave.
Oklahoma City, OK  73102
(405) 235-5500 ∣ (405) 235-2875 (fax)
lstewart@gablelaw.com

***Attorneys for Defendant Coventry
Health and Life Insurance Company***

## CERTIFICATE OF SERVICE

I hereby certify that on August 17th, 2017, a copy of this Notice of Removal was electronically mailed for filing to the Clerk of the U.S. District Court for the Western District of Oklahoma at newcases@okwd.uscourts.gov, and that a copy was also mailed by first class U.S. mail, postage prepaid, to the following attorneys of record for the plaintiff:

James E. Dunn, OBA #15222
Scott B. Hawkins, OBA #21694
James Dunn & Associates, PLLC
1138 N. Robinson Ave.
Oklahoma City, OK 73103
405-239-1000 (Phone)
405-239-1003 (Fax)
jim@usattorney.com
scott@usattorney.com

I further certify that a copy of the Notice of Removal was also promptly delivered for filing to the Clerk of the District Court of Oklahoma County, State of Oklahoma.

/s/ Leasa M. Stewart
Leasa M. Stewart