# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRAVIS B. HOLMAN, ET AL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | NO. CIV-17-0886-HE |
| | ) | |
| COVENTRY HEALTH & LIFE | ) | |
| INSURANCE COMPANY, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This case is before the court on plaintiffs' second motion to remand. Having considered the parties' submissions at the evidentiary hearing and otherwise, the court concludes the motion should be granted.

## Background

The particular claims asserted by plaintiffs and the facts or alleged facts related to those claims are set out fully in other filings and it is unnecessary to recite them in detail here. Briefly stated, plaintiffs Travis Holman and Melissa Holman assert defendant Coventry Health & Life Insurance Company, their health insurer, wrongfully denied Ms. Holman's claim for coverage of her gall bladder surgery. Ms. Holman had a health policy in force issued by Coventry, but decided to enroll in a different Coventry-provided policy—with higher premiums and a lower deductible—prior to the surgery. Green Insurance Associates Inc., an Oklahoma corporation ("Green"), was involved in procuring the new policy for the plaintiffs. Coventry ultimately refused to pay for the surgery, on the basis that the new policy was cancelled for non-payment of premiums and because Ms.

Holman misrepresented facts about her health on the application for the policy. Plaintiffs assert claims for breach of contract and for bad faith breach against Coventry.

This case was originally filed in Oklahoma state court and removed to this court. At the time of its original filing, plaintiffs asserted claims against both Coventry and Green. Coventry removed the case on the basis of diversity. It argued that Green, a non-diverse defendant, was fraudulently joined and should therefore be ignored for purposes of determining diversity. This court concluded there was some possibility of a valid claim being asserted against Green and that it should not be viewed as fraudulently joined. The court remanded the case to the District Court of Oklahoma County on December 6, 2016. Order, December 6, 2016, Case No. CIV-16-1078-HE [Doc. #1-9].

Further proceedings occurred in state court after the December 2016 remand, including discovery by the parties. Coventry filed a motion to dismiss. The state court converted the motion to one for summary judgment and, on March 10, 2017, issued an order refusing to dismiss the case and concluding that plaintiffs' claims were not barred due to non-compliance with the insurance policy's notice provisions. [Doc. #10-1] at 1-2. Thereafter, on August 3, 2017, plaintiffs dismissed Green from the case.

Coventry then removed this case a second time, arguing that the one-year time limit on removal did not apply due to the applicability of the "bad faith" exception. 28 U.S.C. § 1446(c)(1).[1] It contends that plaintiffs did not seriously pursue its claims against Green

---

[1] *28 U.S.C. § 1446(c)(1) provides:*

*A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action,*

2

after the remand and that plaintiffs' assertion and treatment of its purported claims against Green were designed to manipulate the jurisdictional calculation, take advantage of the one-year bar, and ultimately avoid a second removal to this court. Plaintiffs have since filed a second motion to remand. The court held an evidentiary hearing on the motion on October 31 and November 1, 2017, at which testimony was received and other evidence offered.

## Analysis

The "bad faith" exception to § 1446(c)(1)'s one-year removal limitation is of relatively recent vintage and there is no explicit guidance from the Tenth Circuit Court of Appeals as to how the exception should be applied. Another district court in this Circuit has addressed the application of the exception in considerable detail. *See* Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d 1225 (D.N.M. 2014). A number of district courts, both in this circuit and elsewhere, have followed its approach. *See, e.g.* Parkview Gardens Bldg. Owners Ass'n v. Owners Ins. Co., No. 16-cv-2673-WJM-CBS, 2017 WL 3288313 at \*\*6-7 (D. Colo. May 3, 2017); Kamal-Hashmat v. Loews Miami Beach Hotel Operating Co., No. 16-cv-24864-GAYLES, 2017 WL 433209 at \*4 (S.D. Fla. Jan. 27, 2017); Bristol v. Ford Motor Co., No. 4:16-cv-01649-JAR, 2016 WL 6277198 at \*\*3-4 (E.D. Mo. Oct. 27, 2016). The court concludes the Aguayo analysis is a useful guide for determining the current motion.

---

*unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.*

3

Aguayo employed a two-step analysis in determining whether "bad faith" within the meaning of §1446(c) has been shown. First, the court determines whether the plaintiff actively litigated against the non-diverse defendant in state court. Aguayo, 59 F. Supp. 3d at 1274. If plaintiff shows there was active litigation against that defendant, a presumption of good faith arises. Id. at 1274-75. That leads to step two, in which the question becomes whether the defendant has shown, from all the evidence and despite the active litigation, that the plaintiff's real reason for keeping the non-diverse defendant in the case past the one-year deadline was the desire to keep the case in state court. Id. at 1275-76.

As to the first step, plaintiffs' submissions here are sufficient to show that they actively litigated against Green after the first remand. Plaintiffs issued discovery requests to Green. They also issued discovery requests to Coventry which implicated issues that were pertinent to the claims against Green. Motion practice occurred, with Green seeking dismissal of the claims against it and plaintiffs resisting that effort. The court concludes these actions are sufficient to show "active litigation" and hence to trigger the presumption of good faith.

So the question becomes whether Coventry has offered sufficient evidence to rebut that presumption. The Aguayo court's discussion of the showing necessary to rebut a presumption of good faith is perhaps more important than the specific steps involved. Aguayo indicates, based principally on the general presumption against removal, that a court should "draw all reasonable inferences" from the evidence in plaintiff's favor. Id. at 1276. Or, as that court put it, "The Court wants a smoking gun or close to it." Id. at 1277.

This court has some hesitation about placing too much emphasis on the presumption against removal. While that principle continues to be referenced by the Tenth Circuit and other authorities in various contexts, it is also true that Congress has, in some circumstances, acted to protect the availability of the federal forum via expanded removal mechanisms. The Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005) is one such example. *See* Woods v. Standard Ins. Co., 771 F.3d 1257, 1262 (10th Cir. 2014) (explaining the purposes of the Class Action Fairness Act was to expand federal court jurisdiction over class actions). So there is at least some question as to how aggressively the presumption against removal should be applied in determining the nature of the exception involved here, which was plainly intended to protect access to a federal forum. Further, requiring a "smoking gun" may often be tantamount to a requirement of direct evidence of the intent to manipulate the forum selection, and evidence of that sort will rarely be available even when bad faith is actually involved. Still, even subject to those limitations, it appears the Aguayo formulation is substantially correct—that the defendant must present strong, relatively compelling evidence, direct or circumstantial, of the plaintiff's subjective intent in order to rebut the presumption of good faith.[2]

Applying that standard here, the court concludes defendant's evidence falls short—barely—of making the necessary showing. There is ample evidence which circumstantially supports the proposition that plaintiffs' principal purpose for pursuing

---

[2] *One court has explicitly adopted a "clear and convincing" standard. See* Forth v. Diversey Corp., *No. 13-CV-808-A, 2013 WL 6096528 at \*2 (W.D.N.Y. Nov. 20, 2013). But most courts employ some variation of the standard discussed above.*

claims against Green, and for keeping it in the case, was to defeat removal. The familial relationship between Ms. Holman and the Green principals, Ms. Holman's prior representation of Green or related companies (Ms. Holman is an attorney),[3] the rather pointed question of Jason Green early in the dispute as to whether the reason Green was joined was to avoid federal court,[4] the timing of the dismissal relative to other events in the case, and the nature of the dispute plaintiffs claim they wanted resolved prior to dismissal[5] are examples of such evidence.

At the same time, there is evidence that plaintiffs did intend to seek damages against Green and that the lawsuit resulted in ill feelings between plaintiffs and the Green principals. Further, the emails received and reviewed by plaintiffs' counsel just prior to the dismissal of Green can be plausibly viewed as providing the confirmation of Green's activity such as would warrant counsel's decision to dismiss it. Plaintiffs' attorneys' suggestion that they just did not know what Green did to procure the insurance, or did not know Coventry's position on the contract formation issue, until receipt of the emails on

---

[3] *Coventry relies heavily on alleged ethical violations by Holman due to the arguably conflicting roles she played as this dispute played out. In the court's view, whether Ms. Holman's conduct did or did not violate professional standards is somewhat beside the point for present purposes, but the conduct is relevant as it tends to show the nature of the relationship of the parties and the potential for collusion or a suspect motive.*

[4] *[Doc. #10-11] at 1-2. Ms. Holman did not answer Mr. Green's question, suggesting it was inappropriate to do so since this case had been filed by then. Mr. Green's question, coupled with Ms. Holman's non-answer, suggests a warm gun but not a smoking one.*

[5] *The court found particularly unconvincing plaintiff counsel's purported concern with the "shifting positions" of Coventry and their suggestion that the various explanations of benefits, which plainly followed Coventry's effort to cancel the new policy, were somehow inconsistent with the existence of it in the first place.*

August 3, 2017 strikes the court as somewhat forced. But it is also true that a party or its counsel should not be expected to make a decision as to dismissal of another party without a relatively certain knowledge and confirmation of the pertinent facts or positions. Here, where Coventry's formal pleadings and discovery responses did not unequivocally state the new policy had been issued, and where many of its responses or filings were directed to the sufficiency of plaintiff's pleadings rather than to an affirmative statement of its own position, the court cannot say that the basis for dismissal of Green was clear or obvious at a point significantly prior to the date of dismissal.

Finally, the testimony at the hearing of the various lawyers involved, addressing their conversations with each other during the course of the state proceedings, did not clearly establish the presence or absence of bad faith. The various disputes as to what was said were largely of the "he said, she said" variety, and the surrounding circumstances do not provide a meaningful basis for either challenging or corroborating either side's version of the discussions.

In any event, the court concludes, by the thinnest of margins and after giving plaintiffs the full benefit of the relatively deferential standard referenced above, that Coventry's showing falls short of establishing the bad faith necessary to permit removal after expiration of the one year time period. Remand is therefore appropriate.

That leaves the issue of fees and costs. An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award of fees is within the discretion of the court. Martin v. Franklin Capital Corp., 393 F.3d 1143, 1146 (10th Cir. 2004), aff'd. 546

7

U.S. 132 (2005). A decision denying fees will be upheld where there was an objectively reasonable basis for believing the removal was proper. *Id.* Here, there plainly was an objectively reasonable basis for the second removal, although remand has eventually resulted. The court easily concludes that shifting of costs and fees is not warranted.

## Conclusion

For the reasons stated, plaintiffs' motion to remand [Doc. #10] is **GRANTED**. This case is remanded to the District Court of Oklahoma County. Each party shall bear its own costs and expenses in connection with the removal.

**IT IS SO ORDERED.**

Dated this 17th day of November, 2017.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE